JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Cleo Davis ("Davis"), appeals his convictions. Finding no merit to the appeal, we affirm.
 {¶ 2} In 2005, Davis was charged with six counts of gross sexual imposition with firearm specifications, one count of kidnapping with firearm specifications and a sexual motivation specification, and one count of having a weapon while *Page 3 
under disability. Davis waived his right to a jury trial, and the matter proceeded to a bench trial. At the close of the State's evidence, the trial court granted Davis' motion for acquittal as to three counts of gross sexual imposition and for the charge of having a weapon while under disability. The court further found that there was insufficient evidence to proceed on the remaining charges of gross sexual imposition, but sufficient evidence to proceed on the lesser included offenses of misdemeanor sexual imposition. The trial court also dismissed all firearm specifications.
 {¶ 3} The following evidence was adduced at trial.
 {¶ 4} Late one evening in August 2005, fourteen-year-old "D.S." was playing basketball at the Lonnie Burton Recreation Center. Davis, a family friend, drove by and asked D.S. if she wanted to challenge some girls to a basketball game at a nearby court. He offered to take her to McDonalds to get something to eat and then take her to the basketball court. After going to McDonalds, Davis told D.S. that he needed to stop and take a bath before taking her to the basketball court. He drove to a house, and D.S. testified that he took a gun out of the glove compartment and told her to put it in the McDonalds bag. D.S. refused to touch the gun, and Davis took the gun inside the house.
 {¶ 5} Davis told D.S. that she could play video games while he bathed. D.S. sat on the bed and played a video game. She heard water running and then *Page 4 
Davis came out of the bathroom wearing only a bathrobe. D.S. testified that Davis began to touch her buttocks, chest, and vagina. She testified that Davis touched her on top of her clothes. He asked her questions as he touched her. She told him that she wanted to go home, and he replied that she could not go home until she answered his questions. D.S. asked repeatedly to go home, and Davis eventually got dressed.
 {¶ 6} Davis then drove D.S. around. At one point D.S. asked if she could get out, but Davis refused, stating that he was not finished talking with her. Davis eventually let D.S. go near East Tech High School, and she ran home. When she arrived home around 2:00 a.m., the police were at her house.
 {¶ 7} D.S.'s mother testified that she called the police when her daughter missed her 9:00 p.m. curfew. When her daughter arrived home at 2:00 a.m., the mother testified that D.S. was shaking and crying. The next day, Davis came to D.S.'s home and threatened her and her mother.
 {¶ 8} The investigating detective testified that she drove D.S. around looking for the house where she was assaulted, but D.S. was unable to identify the house, except to claim that it was on East 119th Street.
 {¶ 9} Davis testified that he picked up D.S. at the basketball court and took her to McDonalds. He further claimed that he took D.S. by her grandmother's house and spoke with her grandmother. Davis also testified that his car stalled, *Page 5 
so he drove to his brother's house where he could fix the car. Davis denied that he took a bath, as D.S. claimed, and he further testified that the bathtub in his brother's house was unusable. Davis testified that he and D.S. left his brother's house around 10:30 p.m., and he dropped off D.S. near her house around 11:15 p.m. He further stated that he spoke to D.S.'s brother who was present when he dropped off D.S. He denied having any sexual contact with D.S.
 {¶ 10} On rebuttal, D.S.'s grandmother testified that she did not see D.S. or Davis on the evening of the incident, and that if D.S. had stopped by her house late at night, she would have kept her there and not let her leave with Davis. D.S.'s brother testified that he did not see Davis drop off D.S. and never spoke to Davis that evening.
 {¶ 11} At the conclusion of trial, the court convicted Davis of three counts of sexual imposition and kidnapping with the sexual motivation specification. The trial court further found that Davis released D.S. unharmed and in a safe location.[1] The court sentenced Davis to a total of three years in prison and classified him as a sexually oriented offender.
 {¶ 12} Davis appeals, raising two assignments of error. In the first assignment of error, he argues that there was insufficient evidence to support his *Page 6 
conviction. In the second assignment of error, he maintains that his conviction was against the manifest weight of the evidence. Although they involve different standards of review, these assignments of error will be discussed together because they involve the same evidence.
 {¶ 13} A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the State has met its burden of production at trial. State v. Thompkins, 78 Ohio St.3d 380,390, 1997-Ohio-52, 678 N.E.2d 541. On review for sufficiency, courts are to assess not whether the State's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. Id. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond
 {¶ 14} a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph two of the syllabus.
 {¶ 15} In evaluating a challenge to the verdict based on the manifest weight of the evidence, a court sits as the thirteenth juror, and intrudes its judgment into proceedings that it finds to be fatally flawed through misrepresentation or misapplication of the evidence by a jury that has "lost its way." Thompkins, supra. As the Ohio Supreme Court stated:
 "Weight of the evidence concerns the `inclination of the greater amount of credible evidence offered in a trial, to support one *Page 7 side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' * * *
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id.
 {¶ 16} In State v. Bruno, Cuyahoga App. No. 84883, 2005-Ohio-1862, we stated that the court must be mindful that the weight of the evidence and the credibility of witnesses are matters primarily for the trier of fact. A reviewing court will not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the prosecution proved the offense beyond a reasonable doubt. State v.DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus; State v. Eley (1978), 56 Ohio St.2d 169, 383 N.E.2d 132. Moreover, in reviewing a claim that a conviction is against the manifest weight of the evidence, the conviction cannot be reversed unless it is obvious that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Garrow (1995), 103 Ohio App.3d 368,370-371, 659 N.E.2d 814. *Page 8 
 {¶ 17} Davis was convicted of sexual imposition, a violation of R.C.2907.06(A)(1) and (4), which state:
 "(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:
 (1) The offender knows that the sexual contact is offensive to the other person, or one of the other persons, or is reckless in that regard.
 * *
 (4) The other person, or one of the other persons, is thirteen years of age or older but less than sixteen years of age, whether or not the offender knows the age of such person, and the offender is at least eighteen years of age and four or more years older than such other person."
 {¶ 18} Davis was also convicted of kidnapping, in violation of 2905.01, which provides:
 "(A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes: * * * (4) To engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will."
 {¶ 19} Davis maintains that the bathtub in his brother's house was unusable and, therefore, D.S. must have lied. Davis claims that D.S. concocted the story to avoid being punished for violating her curfew. *Page 9 
 {¶ 20} We find that there was sufficient evidence that Davis deceived D.S. by telling her that he wanted to take her to play basketball and offering to take her to McDonalds. Although Davis did take D.S. to McDonalds, he drove her to one that was fifteen minutes away and not the one located nearest the basketball court. D.S. testified that Davis took her to an unknown house, ran water as if to take a bath, and touched her on her breasts, buttocks, and vagina. She testified that she did not want him to touch her. There was also testimony that D.S. was fourteen years old when the assault occurred, and that Davis was forty-five years old at the time of trial.
 {¶ 21} D.S.'s mother testified that her daughter was very upset when she returned home but was able to tell her mother what had happened. The responding police officer testified that D.S. appeared "shaken" and as though she had been crying. A family services social worker testified that she referred D.S. for counseling after hearing what had happened.
 {¶ 22} Although Davis claims he took D.S. to his brother's house and that it "was proven" that the bathtub was unusable, we note that the defense never showed the photos of the bathtub to D.S. so she could not confirm whether it was the same tub. She did testify, however, that the bathtub was not full of junk as was the bathtub described in the photos. D.S. also testified that she could not recall the exact location of the house, except that it was on East 119th Street. *Page 10 
reover, D.S. testified that Davis had keys to the house where he took her. Davis' mother testified that she was the only one with keys to the brother's house which was located on East 121st Street.
 {¶ 23} And although Davis denied any sexual contact, we note that the State was able to rebut Davis' testimony and cast doubt on his version of the events concerning D.S.'s grandmother and brother. It was within the province of the trial court, as the trier of fact, to determine what weight to give each witness' testimony.
 {¶ 24} Thus, in viewing the evidence in the light most favorable to the prosecution, we conclude that Davis' convictions are supported by sufficient evidence. We also find that the trial court did not lose its way or create such a manifest miscarriage of justice as to require reversal of the convictions.
 {¶ 25} Therefore, the first and second assignments of error are overruled.
 {¶ 26} Accordingly, judgment is affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence. *Page 11 
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES J. SWEENEY, P.J., and MELODY J. STEWART, J., CONCUR.
[1] Because the trial court found that Davis released D.S. in a safe place unharmed, the kidnapping was reduced to a second degree felony. R.C. 2905.01(C). *Page 1